# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSEPH W. STAPLES | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-08-CV-831-XR |
| | § | |
| CAREMARK, L.L.C. d/b/a CVS | § | |
| CAREMARK f/k/a CAREMARK RX, INC. | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this date, the Court considered Defendant's motion for summary judgment (Docket Entry No. 16).

### Background

Plaintiff filed this lawsuit on September 5, 2008, in the 407th District Court of Bexar County, Texas, alleging the following causes of action: (1) disability discrimination under Tex. Labor Code § 21.053[1]; (2) age discrimination[2]; (3) intentional infliction of emotional distress; (4) negligent hiring, training, supervision, and retention claims; (5) retaliation under Tex. Labor Code §§ 21.053 and 21.055; and (6) retaliation under Title VII of the Civil Rights Act of 1964. Defendant timely removed this case to federal court.

On June 16, 2001, Plaintiff Joseph Staples was injured in a motorcycle accident. Plaintiff suffered serious injuries in that accident. He began employment with Caremark in December 2002

---

[1] It appears that Plaintiff also brings this claim under the Americans with Disabilities Act.

[2] It is uncertain whether Plaintiff brings this claim under the federal Age Discrimination in Employment Act or the state Texas Commission on Human Rights Act.

1

as a staff pharmacist. He remained employed with Caremark until December 2006.

Plaintiff alleges that when he first began employment at Caremark he was told he would be working a desk job.[3] Plaintiff testified that the impairments he suffered in his motorcycle accident were accommodated by Caremark by providing him a raised work desk. He testified that he also was not required to "roam."[4]

Sometime on or after June 2006, Plaintiff was assigned a new supervisor, Nancy Zatarain, who allegedly questioned why Plaintiff could not roam. Plaintiff informed Ms. Zatarain that he could not stand for long periods of time. Plaintiff alleges that Ms. Zatarain questioned whether he was truly disabled and that she inferred he was trying to "scam" the Company.[5]

Workflow in the company's business ebbed and flowed. However, beginning on January 1, 2005, Caremark was awarded a Federal Employee Program contract. As part of that contract, Caremark agreed to provide a call center dedicated solely to the FEP and also guaranteed that all calls would be answered within a specified period of time. Additional pharmacy technicians were hired and Caremark instituted a system whereby pharmacists roamed the call center to answer the pharmacy

---

[3]The Company's records indicate that on July 28, 2004, Plaintiff provided his employer medical documentation that justified raising the Plaintiff's desktop to 40 inches from the floor and an appropriate chair. Defendant approved the request stating: "This will allow the employee the option of sitting or standing to perform his duties and is considered to be a permanent accommodation." Exhibit 4 to Defendant's Appendix.

[4]Apparently Caremark operated a large call center. Pharmacy technicians are allowed to perform certain duties. However, if a technician receives a call from a patient that requires a pharmacy consultation, a pharmacist is notified by raising a red flag and a pharmacist is required to "roam" over to that technician work area.

[5]Ms. Zatarain allegedly questioned how could Plaintiff be taking surfing vacations and be disabled. Plaintiff responds that he does not see "any correlation between disabled under the ADA and whether or not I can surf, wind surf or stand on my head." Plaintiff's Depo. at p. 90.

2

consultations. The pharmacy technicians sat at a row of desks in an area known as the "jungle." If they required a pharmacy consultation, they raised a red flag which notified one of the roaming pharmacists that they were needed to answer the patient's questions. During this time frame, Plaintiff was not required to roam. He generally remained at his own desk in an area known as the "cave", where he would take inbound calls. *See* Declaration of William "Greg" Rives.

In the Fall of 2005, Plaintiff and pharmacists Marcie Perme and Paul Govoni were assigned to a new "offline" team. They were required to return calls that came in after hours that required a pharmacist consultation. *Id.*

In November 2006, the Company again reorganized slightly. A new Rx department began not only handling incoming calls but also began handling outgoing calls. Mr. Rives opines that the "offline" team's work was reduced by fifty percent as a result of the Rx department also handling outgoing calls. During this time frame the Company also received a complaint from Ms. Perme that Plaintiff was not "pulling his weight" and was engaged in non-work internet activity. *Id.*

On November 21 or 22, 2006, Mr. Rives met with Ms. Zatarain to discuss removing one pharmacist from the offline team based on their decreased workload. They reviewed the three pharmacists' performance evaluations and concluded that Plaintiff should be reassigned to his former duties fielding incoming calls. *Id.* In addition, it was determined that there was no business need for overtime work by non-roaming pharmacists.

After the decisions made by Mr. Rives and the other supervisors, Plaintiff was informed by Ms. Zatarain that he would no longer be working "offline", that Ms. Perme and Mr. Govani would remain handling "offline" work, and that non-roaming pharmacists would not be working overtime. *Id.* After Plaintiff was informed of these decisions, Plaintiff spoke with Mr. Rives and stated he was

3

upset, that making the reassignments based on performance evacuations was not a "good way" to evaluate employees, that he felt he was being "singled out" by being denied overtime work because he could not roam, and that he would be looking for another job. *Id.*

Shortly before November 28, 2006, Plaintiff spoke to his former supervisor about his situation and complaints. On November 28, Plaintiff's supervisor, Nancy Zatarain, called Plaintiff in and allegedly expressed discontent with Plaintiff speaking to another supervisor. During this meeting Ms. Zatarain again allegedly informed Plaintiff that he was not disabled. In addition, Ms. Zatarain also allegedly informed Plaintiff that he could push a rolling chair in the "jungle" while roaming if he needed to sit down.[6] After that meeting, Plaintiff requested an opportunity to speak with a human resources representative. Plaintiff then met with Nicole Manzano and complained that he was being discriminated against because of his disability.

As a result of the meeting with Ms. Manzano, Plaintiff acknowledges in his deposition that he was not required to "roam." Plaintiff's Depo. at p. 151. Plaintiff argues, however, that no satisfactory resolution was reached regarding the "overtime" issue. Plaintiff acknowledges that between November 28 and December 26 (his last day of employment at Caremark) he was never subjected to any other discriminatory acts. *Id.* at 153.

Sometime in November, Plaintiff began seeking other employment opportunities. Plaintiff tendered his written notice of resignation to the Company on December 13. On this same day, Aetna wrote an offer of employment letter to Plaintiff. Plaintiff quit his employment at Caremark effective December 26. See Exhibits 9 and 10 to Defendant's Appendix.

---

[6]Plaintiff responds that given the layout of the jungle that was not a feasible option. "Plus, I'd already been given an accommodation to sit at my desk and do my job, so why would I even entertain that." Plaintiff's Depo. at p. 78.

On the same day his resignation became effective, Plaintiff wrote a letter. It was not addressed to anyone in specific and it is unknown when it was delivered. He states in the conclusion "by the time you read this letter I will have been forced to leave Caremark." In this letter he complains of disability discrimination.

On February 20, 2007, Plaintiff filed a charge of discrimination with the EEOC. In that charge Plaintiff alleged only that he had been discriminated against because of his disability. He did not bring any claims of age discrimination or retaliation.

Plaintiff alleges that he was "constructively discharged" because he was being discriminated against and because of the denial of overtime opportunities. *Id.* at 170. Plaintiff alleges he was retaliated against because after he told his supervisor he could not roam because of his disability, he was told that "once you decide to roam, we'll give you back the overtime." *Id.* at 186.

Although the Plaintiff's Complaint references age discrimination, Plaintiff acknowledged in his deposition that he has no complaints based on age discrimination. *Id.* at 188-189

With regard to Plaintiff's intentional infliction of emotional distress claim, Plaintiff testified that he relies upon the same complaints stated above for his IIED claim. *Id.* at 189-192. Plaintiff testified that he has not seen any medical providers for his IIED claim. *Id.* at 210.

**Defendant's Motion for Summary Judgment**

Defendant argues that Plaintiff's disability claims fail as a matter of law because at no time was Plaintiff denied a reasonable accommodation. Defendant argues that the two accommodations made by Plaintiff were granted - a request for a raised desk and being excused from roaming.[7]

---

[7]Plaintiff admits these facts and accordingly summary judgment is granted as to the issue of any denial of reasonable accommodations. See Plaintiff's Response (doc. no. 20) at p. 10. Plaintiff only complains about the denial of overtime. However, a failure to accommodate claim

5

With regard to Plaintiff's allegation that non-disabled employees were treated more favorably than he was, Defendant argues that there is no evidence that any similarly-situated pharmacists worked overtime after November 21, 2006.[8] Alternatively, it argues that it had a legitimate, non-discriminatory business reason for its action - there was no business need for overtime work by non-roaming pharmacists.

With regard to Plaintiff's claim that he was subjected to a hostile work environment because of his disability, Defendant argues that Plaintiff fails to establish that any alleged harassment affected a term, condition or privilege of his employment. Further, it argues that the alleged questioning of Plaintiff by Ms. Zatarain fails to establish conduct so egregious as to alter the conditions of employment.

Defendant also seeks summary judgment arguing that Plaintiff's constructive discharge fails as a matter of law.

With regard to Plaintiff's retaliation claims, Defendant argues that Plaintiff failed to exhaust his administrative remedies by failing to assert these claims before the EEOC.

With regard to Plaintiff's IIED claim, Defendant argues that it is barred by the Texas Supreme Court's decision in *Hoffman-LaRouche, Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004).

---

under the ADA is separate and distinct from a claim of discriminatory treatment under the ADA, and the two types of claims are analyzed differently under the law. *See Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894 (7th Cir. 1999).

[8]Plaintiff argues that "it is highly improbable that no pharmacist worked overtime during the period immediately following the new program's institution." He further states in his affidavit that employees who were not disabled were asked to work overtime between November 21, 2006 and December 26, 2006.

6

Alternatively, it argues that Plaintiff fails to establish that any alleged conduct was extreme and outrageous. It further argues that Plaintiff fails to establish that he suffered from any severe emotional distress.[9]

With regard to Plaintiff's negligent hiring, supervision and retention claims, Defendant argues that such claims are barred by *Gonzales v. Willis*, 995 S.W.2d 729 (Tex. App. - San Antonio 1999, no pet.) and *Proctor v. Wackenhut Corrections Corp.*, 232 F. Supp. 2d 709 (N.D. Tex. 2002). Alternatively, citing *Sibley v. Kaiser Foundation Health Plan*, 998 S.W.2d 399 (Tex. App. - Texarkana 1999, no pet.), it argues that summary judgment is proper because a negligent hiring and supervision claim extends only to prevent an employee from causing physical harm to a third party.

**Analysis**

    A.    **Plaintiff's retaliation claims**

As indicated above, Plaintiff failed to allege any retaliation claims in his charge of discrimination with the EEOC. The Court has reviewed Plaintiff's February 20, 2007 charge and concludes that a retaliation claim could not be extrapolated from the allegations in that charge. Plaintiff's ADA and TCHRA retaliation claims are dismissed. *Drake v. Nicholson*, 324 Fed. Appx. 328 (5th Cir. 2009); *Cooper v. Dallas Police Ass'n*, 261 Fed. Appx. 735 (5th Cir. 2008).

    B.    **Hostile Work Environment Claim**

A hostile-work environment, sufficient to give rise to an action under the ADA, exists when the disability-based harassment is sufficiently pervasive or severe to alter the conditions of employment and creates an abusive working environment. *Flowers v. S. Reg'l Physician Servs. Inc.*,

---

[9]Plaintiff agrees that dismissal of the IIED claim is proper. *See* Plaintiff's Response (doc. no. 20) at p. 20.

247 F.3d 229, 236 (5th Cir. 2001). In determining whether a working environment is abusive, a court must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Lindsey v. Chevron USA Inc.*, 51 Fed. Appx. 929 (5th Cir. 2002). The Court finds that the acts complained of by Staples are not sufficiently pervasive or severe. Three conversations with his supervisor wherein she questions why he cannot roam and expresses skepticism do not rise to the level of conduct sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment. *Soledad v. U.S. Dept. of Treasury*, 304 F.3d 500 (5th Cir. 2002).

C. **Constructive Discharge Claim**

Plaintiff bears the burden of showing constructive discharge. *See Jurgens v. Equal Employment Opportunity Commission*, 903 F.2d 386, 390-91 (5th Cir. 1990). To establish a constructive discharge claim, Plaintiff must show that his working conditions were "so intolerable that a reasonable employee in [his] position would [have felt] compelled to resign." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004) (citations omitted); *see also Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 439-40 (5th Cir. 2005). Courts will consider the following factors when determining whether a reasonable employee would feel compelled to resign: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable that the employees's former status. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (*citing Brown v. Bunge Corp.*, 207

8

F.3d 776, 782 (5th Cir. 2000)). Although "[p]roof is not required that the employer imposed these intolerable working conditions with the specific intent to force the employee to resign," *Jurgens*, 903 F.2d at 390, proof of "constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Brown*, 237 F.3d at 566 (*citing Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)). Discrimination alone cannot form the basis for a constructive discharge claim as a matter of law. *See Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990).

In this case Plaintiff only argues that he was denied some unknown and speculative amount of overtime pay and that he was allegedly harassed by Ms. Zatarain. Inasmuch as Plaintiff failed to even establish a hostile work environment claim, Plaintiff fails to establish the greater degree of harassment that is required to establish a constructive discharge claim.

### D. Plaintiff's negligence claims

"The basis for responsibility for negligent hiring and retention is the employer's negligence in hiring or retaining an incompetent employee who the employer knew or, in the exercise of ordinary care, should have known was incompetent or unfit." *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 420 (Tex. App.-Dallas 2007, pet. denied). In Plaintiff's Original Petition, he alleges that "Defendant did not properly screen, evaluate, investigate, or take any reasonable steps to determine that [Ms. Zatarain] was unfit, incompetent or a danger to third parties." He concludes that allegation by stating that "Defendant's failure to exercise reasonable care in the hiring, supervision and training regarding Plaintiff's civil rights was the proximate cause of damages to Plaintiff...."

To prevail on his negligence claims, Plaintiff must ultimately establish that the Defendant committed a common-law tort against him. *See Gonzales v. Willis*, 995 S.W.2d 729, 739 (Tex.

9

App.-San Antonio 1999, no pet.). This Court adopts the emerging trend in federal courts in Texas that hold that negligent hiring, retention, supervision and training claims based on a discrimination allegation cannot survive because statutory discrimination claims are not a common law tort. *See Udoewa v. Plus4 Credit Union*, No. H-08-3054, 2009 WL 1856055 (S.D. Tex. June 29, 2009)("To prevail on a negligent retention claim, Udoewa must ultimately establish that Stark committed a common-law tort against him."); *Havens v. Victoria of Texas Ltd. Partnership*, No. V-06-119, 2008 WL 1858924 (S.D. Tex. April 24, 2008)("As noted elsewhere in the Fifth Circuit, several Texas appellate courts and federal district courts have begun to adopt the rule that employers are not liable for the allegedly negligent hiring, training, supervision and retention of an employee unless the employee committed some independent, actionable tort."); *Cunningham v. Daybreak Therapy, L.P.*, No. 2:06-cv-289, 2007 WL 2694438 (N.D. Tex. Sept. 17, 2007)(a claim for negligent supervision requires that an employee have committed an actionable tort against the Plaintiff. Sexual harassment cannot be the basis of a negligent supervision claim because it is not a common law tort.); *Johnson v. Blue Cross/Blue Shield of Texas*, 375 F. Supp.2d 545 (N.D. Tex. 2005)("[s]everal Texas appellate courts and federal district courts have recently adopted the rule that an employer cannot be held liable for negligently hiring an employee unless the employee committed an actionable tort."); *Duckens v. Brake Check, Inc.*, No. H-04-345, 2005 WL 1503468 (S.D. Tex. June 8, 2005); *Hayes-Smith v. Bell Helicopter-Textron, Inc.*, No. 4:04-cv-319, 2004 WL 1933334 (N.D. Tex. Aug. 30, 2004).

Alternatively, dismissal of the negligence claims is proper because Plaintiff has presented no summary judgment evidence establishing that Defendant was negligent in hiring Ms. Zatarain or that it failed to train or supervise her.

In the alternative, Plaintiff's negligence claims are barred by the exclusivity provisions of the

Texas Workers' Compensation Act. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997) (holding that plaintiff's sexual harassment claims, characterized in terms of failure to provide a safe workplace, negligent hiring, supervision and retention were precluded by the Workers' Compensation Act's exclusivity provision.).

### E. Disability Discrimination (Disparate Treatment) Claims

Given the Court's rulings above, it appears that the only remaining issue in this case is whether Plaintiff was discriminated against because of his disability when he was allegedly denied overtime opportunities between November 21 and December 26.

To establish a prima facie case of disability discrimination, Plaintiff must show that he (1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action, and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees. *Arrington v. Southwestern Bell Tel. Co*, 93 Fed. Appx. 593, 596 (5th Cir. 2004). Defendant argues that Plaintiff has failed to meet the fourth prong of the above test. As stated above, Defendant argues that there is no evidence that any similarly-situated pharmacists worked overtime after November 21, 2006. However, a fact issue exists on that question.[10]

Alternatively, Defendant argues that it had a legitimate, non-discriminatory business reason for its action - there was no business need for overtime work by non-roaming pharmacists.

"Trying to save money is a legitimate, nondiscriminatory reason" for refusing to approve overtime. *See Aviles v. Cornell Forge Co.*, 183 F.3d 598 (7th Cir. 1999)(granting summary judgment

---

[10]This is a close call. Plaintiff only relies upon his own affidavit for the statement that other pharmacists received overtime during the questioned time frame. This may be a conclusory statement that lacks personal knowledge, however, Defendant does not assert these objections. Defendant does not provide any competent evidence at all on this issue.

11

on a Title VII retaliation claim). However, in this case it is very unclear why Defendant implemented the no overtime policy and who was impacted by this policy. Unlike other plans or policies implemented by companies to save money, it appears that this policy had the sole purpose and effect of depriving Plaintiff the opportunity to receive overtime. Defendant's motion for summary judgment on this issue is denied.

## Conclusion

Defendant's motion for summary judgment is granted in part and denied in part. Plaintiff's ADA/TCHRA disparate treatment claims remain pending. All other causes of action are dismissed.

It is so ORDERED.

SIGNED this 29 day of October, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE